<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| James Black, | : | |
| | : | Civil Action No. 12-3960(RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| Charles Warren et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**BUMB**, District Judge

This matter is presently before the Court upon submission of an Amended Petition for a Writ of Habeas Corpus under Title 28 U.S.C. § 2254 ("Pet.")(ECF No. 17), by James Black ("Petitioner"). For the reasons stated below, the Petition will be denied.

I.   <u>BACKGROUND</u>

Petitioner is presently confined at New Jersey State Prison, in Trenton, New Jersey. (ECF No. 17 at 60.) On October 31, 2003, he was convicted by a jury in the Superior Court of New Jersey, Atlantic County, of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a (count one); third-degree terroristic threats, N.J.S.A. 2C:12-3b (count two); third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4d (count

1

three); fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5d (count four); murder, N.J.S.A. 2C:11-3a(1) and (2) (count five); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4d (count six); and third-degree unlawful possession of a weapon, N.J.S.A. 3C:39-5b (count seven). State v. Black, 2006 WL 587790, at *1 (N.J. Super. Ct. App. Div. March 13, 2006). Petitioner was subsequently sentenced to consecutive sentences for life with thirty years parole ineligibility for murder, fifteen years for rape, four years for terroristic threats, and four years for unlawful possession of a firearm.  Id.

Petitioner filed a direct appeal, and the appellate court made the following findings.

> Evidence produced at trial disclosed that defendant and the victim, Georgia Mills, lived together in an apartment in Atlantic City with their daughter until September 1994, when their six-year relationship ended and defendant was ordered by Mills to leave. To prevent defendant's return, Mills took defendant's apartment key, and later changed the apartment's locks. Nonetheless, defendant continued to seek contact with Mills.
>
> Shortly before Christmas 1994 defendant, having learned that Mills had not returned to her apartment on the prior night, accosted her at a hair salon and slammed her head against a wall with force sufficient to create a hole. Although the event was not witnessed, persons who came to Mills's aid immediately after the assault found her crying and holding her head and observed the

2

consequent damage to the wall. In trial
testimony, defendant denied that the
incident arose from jealousy, claimed that
he was merely concerned as the result of
Mills's absence for her wellbeing, and
asserted that he had damaged the wall
himself with his fist.

On January 15, 1995, defendant returned to
Mills's apartment in a jealous rage, cut
Mills's clothes off with a knife, and raped
her at knifepoint. The rape was witnessed by
Mills's sister, Ann Marie, who also lived in
the apartment with her two children. Ann
Marie called the police. They were met upon
their arrival at the apartment by Mills,
hysterical, clad only in a torn bra, and
exhibiting a large knot on her forehead and
a bruise on her left cheek. She stated to
the police that she had been beaten by
defendant, and she confirmed the rape.
Defendant, who had remained seated quietly
in a chair in the bedroom, was arrested
after a scuffle and, while being escorted
from the scene, stated in Jamaican dialect:
"I can't believe she's doing this to me,
getting me locked up like this. When I get
out of here, I'm going to kill her and her
sister." He repeated the threat to a
witness, Annette Reid, while being escorted
through the apartment's lobby, stating in
dialect: "See what your friends did to me.
I'm going to kill her." Defendant also
repeated the death threat to a police
officer while being booked. The police later
found a knife on the headboard of Mills's
bed and discovered that the telephone line
in the bedroom had been severed. Following
his arrest, defendant gave a signed
statement in which he admitted that he had
become jealous after observing Mills kiss
another man and that he had engaged in an
altercation with Mills, cutting off her
clothes, but he claimed that intercourse had
been consensual.

> Evidence also disclosed that, after
> defendant's release from jail, he had gone
> to Mills's place of employment, Trump Plaza,
> and had asked for Derrick Alford, the person
> with whom Mills was having a relationship. A
> few days later, on the evening of February
> 20, 1995, Mills was repeatedly shot as she
> left work. The shooting was witnessed, and
> defendant was identified as the perpetrator
> by Trump Plaza employees. In a later phone
> call to Mills's sister Ann Marie, defendant
> stated when asked why he had killed Mills:
> "I love her and if I can't have her, nobody
> can." At trial, defendant denied that he was
> Mills's murderer.
>
> Defendant fled to Jamaica after learning of
> Mills's death, but was apprehended on August
> 24, 2000.

State v. Black, 2006 WL 587790, at *1-2 (N.J. Super. Ct. App.

Div. March 13, 2006).

The appellate court denied Petitioner's claim that the

trial court erred by admitting evidence of his prior assaults on

the victim.   Id. at *3-4. The court also found no merit to

Petitioner's claim that the jury could not have found beyond a

reasonable doubt that he committed terroristic threats. Id. at

*4. Finally, the court rejected Petitioner's sentencing claims.

Id. at *5-6.

After denial of his direct appeal, Petitioner sought post-

conviction relief ("PCR"). On August 14, 2008, the PCR Court

held a hearing, and denied Petitioner's claims. (Transcript of

Post-Conviction Relief Hearing, State v. Black, #A-6375-08-T4

(N.J. Super. Ct. Law Div. August 14, 2008) (ECF No. 10-11.)

4

Petitioner appealed, and the appellate court affirmed the PCR

Court. State v. Black, 2011 WL 2416885 (N.J. Super. Ct. App.

Div. May 20, 2011).

The appellate court addressed each ground for post-

conviction relief. Regarding Petitioner's claim that trial

counsel was ineffective by failing to make a motion to exclude

the in and out of court identifications[1] of Jackie Nieves, Joseph

Crean and Benton Jefferson, the PCR Court found:

> Crean was an electrician at Trump Plaza who
> witnessed the shooting, and identified Black
> as the shooter. Jefferson, another Trump
> Plaza employee, witnessed the shooting and
> also identified Black as the shooter.
> Jefferson also testified that Black had come
> to the Plaza's kitchen area a few days
> before the shooting and asked for Derrick
> Alford, who was dating Mills at the time.
> Nieves heard the shooting, and testified

---

[1] In United States v. Wade, the Supreme Court addressed the issue
of "whether courtroom identifications of an accused at trial are
to be excluded from evidence because the accused was exhibited to
the witnesses before trial at a post-indictment lineup
conducted for identification purposes without notice to and in
the absence of the accused's appointed counsel." 388 U.S. 218,
219 (1967)("the accused's inability effectively to reconstruct
at trial any unfairness that occurred at the lineup may deprive
him of his only opportunity meaningfully to attack the
credibility of the witness' courtroom identification.")  The
Court could not determine whether the in court identifications
had an independent origin, which would render the absence of
counsel at the pretrial identification harmless error.  Id. at
242. Therefore, the Court ordered the district court to hold a
hearing on the matter. Id. After Wade, the Supreme Court held
that, short of "a very substantial likelihood of irreparable
misidentification," the reliability of identification evidence
is for the jury to decide. Manson v. Brathwaite, 432 U.S. 98,
116 (1977).

that she had seen Black in the area just
prior to hearing the shots.

Black argues that identifications made by
Crean, Jefferson, and Nieves, both in and
out of court, were subject to suppression
under Wade principles because, in each case,
the police violated the Attorney General
Guidelines for Preparing and Conducting
Photo and Live Lineup Identification
Procedures (Guidelines ) in connection with
their photo array procedures. The Guidelines
were promulgated in 2001, and did not govern
police conduct at the time of the
investigation into Mills' murder almost six
years earlier.

Although we question the viability of
Black's argument that trial counsel was
ineffective for failing to seek retroactive
application of the 2001 Guidelines to police
procedures that occurred years before their
promulgation, we nevertheless review each of
Black's arguments.

. . .

Crean identified Black two days after the
murder. Black points to the following
procedures utilized by the police as
violative of the Guidelines: (1) the photo
array was shown to Crean by the primary
investigating officer; (2) Black's photo
contained a background different from the
other five photos; (3) the photos were
displayed all at once rather than
sequentially; and (4) the officers told
Crean that they believed they knew the
identity of the shooter. As to Jefferson,
Black claims that procedures utilized were
suggestive because the photos were shown by
the investigating officer in a non-
sequential manner. Black makes essentially
the same argument with respect to the photo
array shown to Nieves. In addition, Black
asserts that the police officer made a

suggestive statement when he asked Nieves to
"pick out a picture of the man [she] saw."

Even when the Guidelines are applicable,
conduct inconsistent with their dictates,
such as the involvement of the primary
investigating officer, does not necessarily
render the photo identification
impermissibly suggestive. . . .
Although the police acknowledged that the
background of Black's photo was "a little
different" from the others in the array
because there were "some darker lines" in
the background, Officer Roff testified that
the police reproduced the photo in black and
white so that it would look similar to the
other photos. There is nothing in the record
to contradict that testimony. Complete
uniformity is not required, nor is it always
practical. The differing background
described in Black's photo would not provide
a sufficient basis to warrant a finding that
the array was impermissibly suggestive.

Black fails to explain how the simultaneous,
as opposed to sequential, display of the
photos prejudiced the result in this case.
Although sequential display is now the
required procedure, it was not in 1996, and
we see nothing inherently suggestive about
the simultaneous displays in this case.

Black also relies on the statement to Crean
that "we think we have him" at the time of
the photo array, as well as the failure to
instruct Nieves that a photo of the man she
saw may not have been included in the array
when she was asked to "pick out" the man she
saw prior to the shooting. He asserts that
those procedures also violated the
Guidelines and warrant suppression of the
identifications.

In determining whether a photo array and the
accompanying display procedures are
impermissibly suggestive, the Supreme Court
has held that

7

"[i]mpermissive suggestibility is to be determined by the totality of the circumstances of the identification. It is to be stressed that the determination can only be reached so as to require the exclusion of the evidence where all the circumstances lead forcefully to the conclusion that the identification was not actually that of the eyewitness, but was imposed upon him so that a substantial likelihood of irreparable misidentification can be said to exist."

[*State v. Madison*, 109 N.J. 223, 234 (1988) (emphasis added) (quoting *State v. Farrow*, 61 N.J. 434, 451 (1972), *cert. denied*, 410 U.S. 937, 93 S.Ct. 1396, 35 L. Ed.2d 602 (1973)).]

In the present pre-Guidelines case, the statement by police to Crean that they believed they had the suspect and the request that Nieves "pick out" the man she saw do not "forcefully" demonstrate that the identification was "imposed" on Crean or Nieves. Id. at 234.

At a Wade hearing, the motion judge would have had to determine whether the identification procedures were "impermissibly suggestive" and, if they were, whether the identifications were "nevertheless reliable" under the "totality of the circumstances." *State v. Herrera*, 187 N.J. 493, 503-04 (2006). Our review of the record in this case, including the trial testimony with respect to the identifications, leads us to conclude that Black would not have been able to prevail at a Wade hearing. That, together with the fact that the Guidelines were not applicable at the time of the underlying investigation, leads us to the further conclusion that Black has not satisfied either prong of the Strickland test on this issue.

8

Black, 2011 WL 2416885, at *4-6 (footnotes omitted).

The state appellate court next addressed Petitioner's claim that his trial counsel was ineffective by failing to object to an erroneous jury instruction that the State had to prove the defendant acted "purposely" to find him guilty of aggravated sexual assault.  Id. at *7.

The court found the PCR Court was correct in concluding that "purposely" is a higher standard that includes "knowingly," which is the requisite element for aggravated sexual assault. Id. Under state law, the court noted that acting "knowingly" is "less than purposeful conduct." Id. Although the jury instruction was incorrect, the error benefitted the defendant. Id. Therefore, Petitioner did not meet either prong of the Strickland test.  Id.

The PCR Court also addressed Petitioner's contention that trial counsel was ineffective by failing to use the victim's handwritten statement that she did not want to pursue her complaint for aggravated sexual assault to sever that count from the other charges, including murder. Id. at *8. Petitioner argued that the victim's statement would have barred evidence of the sexual assault at the murder trial under N.J.R.E. 404(b). Id.

The appellate court ruled:

Initially, we note that Black ignores two
important facts. First, Mills' statement
does not say that the rape did not occur,
but merely that she did not want to pursue
the charges. Second, the decision of whether
to pursue prosecution of a first-degree
crime is made by the State and not the
victim. Here, the rape was witnessed by
Mills' sister, its aftermath was witnessed
by the police, and Mills confirmed to the
investigating officers that there had been a
rape. In addition, when he was arrested at
the scene, Black threatened to kill Mills
and her sister in the officers' presence.
Consequently, there was little chance that
the charges would have been dropped by the
Prosecutor.

"[T]he basic issue to consider in deciding
whether to sever counts from one another is
whether evidence of the offenses sought to
be severed would be admissible under
N.J.R.E. 404(b) in the trial of the
remaining charge." *State v. Keys*, 331
N.J.Super. 480, 491 (Law.Div.1998), *aff'd*,
331 N.J.Super. 429 (App.Div.), *certif.
denied*, 165 N.J. 607 (2000).

"Central to the inquiry is 'whether,
assuming the charges were tried separately,
evidence of the offenses sought to be
severed would be admissible under N.J.R.E.
404(b) in the trial of the remaining
charges.'" *State v. Pitts*, 116 N.J. 580,
601-02 [(1989)]. If the evidence would be
admissible at both trials, then the trial
court may consolidate the charges because 'a
defendant will not suffer any more prejudice
in a joint trial than he would in separate
trials.'" *State v. Coruzzi*, 189 N.J.Super.
273 [(App.Div.), certif. denied,94 N.J. 531
(1983)].

. . .

As noted by the trial judge in denying PCR,
we held on the direct appeal that evidence

10

of the prior sexual assault was admissible under N.J.R.E. 404(b). *State v. Black*, *supra*, slip op. at 6-10. We see no reason to believe that the trial judge would have made a different decision had the statement been relied upon, nor do we believe that the result of the direct appeal would have been different.

Use of the statement in an attempt to impeach the State's trial witnesses, as suggested by Black, would have been a highly risky endeavor, inasmuch as the document could have been used by the State to support its assertion that Mills was afraid of Black and was intimidated into giving the statement because of his threat to kill her. In light of the strong presumption that counsel was acting effectively, an attorney's strategy at trial is not generally second-guessed. See State v. Gary, 229 N.J.Super. 102, 115-16 (App.Div.1988).

Black has failed to articulate a prima facie case as to either prong of Strickland with respect to the suggested use of Mills' written statement.

Id. at *8-9.

Petitioner further argued that the PCR Court erred by denying him an evidentiary hearing regarding his ineffective assistance of counsel claims. Id. at 2. The appellate court denied this claim as follows:

Claims of ineffective assistance of counsel are well suited for post-conviction review, and petitioners are rarely barred from raising such claims in petitions for PCR. R. 3:22-4(a); *Preciose*, *supra*, 129 N.J. [451] 459-60 [1992]. Merely raising such a claim does not, however, entitle a defendant to an evidentiary hearing. *State v. Cummings*, 321 N.J.Super. 154, 170 (App.Div.), *certif.*

11

*denied*, 162 N.J. 199 (1999). Rather, the
decision to hold an evidentiary hearing on a
defendant's ineffective assistance of
counsel claim is within the trial court's
discretion. *Ibid.*

Trial courts should grant evidentiary
hearings and make a determination on the
merits of a defendant's claim only if the
defendant has presented a prima facie claim
of ineffective assistance. *Preciose*, *supra*,
129 N.J. at 462-64. In determining whether a
prima facie claim has been established, the
facts should be viewed in the light most
favorable to a defendant. *Id.* at 462-63.
. . .
We are satisfied that no evidentiary hearing
was required in this case because, for the
reasons explained below, we have concluded
that Black failed to present a prima facie
case of ineffective assistance of counsel.

<u>Id.</u> at 3-4.

In the petition before this Court, Petitioner raised the

following four grounds for relief:

GROUND 1:  The State Court's ruling that
Defendant was not denied his right to the
effective assistance of counsel, due process
of the law and right to a fair trial under
the state and federal constitution since
trial counsel failed to motion the court to
grant an order excluding the in and out of
court identification of Jackie Nieves,
Joseph Crean, and Benton Jefferson, was
contrary to clearly established federal law
and United States Supreme Court precedence
under ineffective assistance of counsel
violated Petitioner's rights under the U.S.
Const. Amend Six and Fourteenth

GROUND 2:  Petitioner contends that his
conviction should be vacated because trial
counsel's failure to provide adequate legal
representation to Petitioner as a result of

12

his failure to object to an erroneous
instruction on the aggravated sexual assault
charge, the trial court's instruction to the
jury that a purposeful intent was required
to find the petitioner guilty of the charge,
was ineffective assistance of counsel.
Counsel's actions were contrary to the
United States Supreme Court ruling in
Strickland v. Washington and clearly
established federal law.

GROUND 3:  Trial counsel's failure to
protect Petitioner's constitutional rights
to due process of law and a fair trial when
he failed to use the alleged sexual assault
victim's withdrawal statement to sever the
sexual assault charge from the alleged
homicide charge, and to introduce it at
trial violating Petitioner's Sixth Amendment
of the United States Constitution.

GROUND 4:  Trial counsel's failure to
protect Petitioner's constitutional rights
to due process of law and a fair trial when
he failed to challenge and/or argue that
Petitioner was entitled to an evidentiary
hearing, this was ineffective assistance of
counsel, contrary to clearly established
federal law, or an unreasonable application
of federal law therefore a writ should issue

(ECF No. 17 at 21-25).

    Respondent opposed the petition.  (Answer to Amended

Petition for Writ of Habeas Corpus "Answer")(ECF No. 20.)

Petitioner filed a traverse.  (Traverse)(ECF No. 23.)

II.  <u>ANALYSIS</u>

    A.  <u>Standard of Review</u>

    28 U.S.C. § 2254(d) provides:

        An application for a writ of habeas corpus
        on behalf of a person in custody pursuant to

13

> the judgment of a State court shall not be
> granted with respect to any claim that was
> adjudicated on the merits in State court
> proceedings unless the adjudication of the
> claim--
>> (1) resulted in a decision that was
>> contrary to, or involved an
>> unreasonable application of, clearly
>> established Federal law, as determined
>> by the Supreme Court of the United
>> States; or
>> (2) resulted in a decision that was
>> based on an unreasonable determination
>> of the facts in light of the evidence
>> presented in the State court
>> proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013)(citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, not the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412.

An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)). "When a federal claim has been presented to a state court and the state

court has denied relief, it may be presumed that the state court
adjudicated the claim on the merits in the absence of any
indication or state-law procedural principles to the contrary."
Harrington v. Richter, 562 U.S. 86, 99 (2011). Thus, when a
state court summarily denies a claim "a habeas court must
determine what arguments or theories ... *could have* supporte[d]
the state court's decision; and then it must ask whether it is
possible fairminded jurists could disagree that those arguments
or theories are inconsistent with the holding in a prior
decision of this Court." Cullen v. Pinholster, 131 S.Ct. 1388,
1402 (2011)(quoting Harrington, 562 U.S. at 100 (emphasis
added).

    B.   The Habeas Claims

        1.  Ground One

Petitioner argued that Witness Nieves's identification of
Petitioner from a photo array was impermissibly suggestive
because Petitioner's photograph had a different background from
all of the photographs in the array. (Amended Mem. of Law in
Supp. of Pet. for Writ of Habeas Corpus Under 28 U.S.C. § 2254
("Petr's Habeas Brief") at 44-45)(ECF No. 17). Concerning
Witness Crean's identification of Petitioner, Petitioner
contended the identification procedure was also impermissibly
suggestive. Prior to Crean viewing the array, police officers

15

told Crean that "we think we have him," referring to the shooter. (Id. at 45.)

Petitioner also asserted certain facts that called into question the eyewitness identifications. First, Crean told investigators he was fifty or sixty feet away from the shooting, and it was "kinda dark" and dimly lit. (Id. at 43.) Second, five eyewitnesses were interviewed, and only Crean identified Petitioner. (Id.) Third, Crean said the shooter was wearing a black and brown plaid coat, blue jeans and a baseball hat, and he was husky. (Id.) Nieves, who said she saw Petitioner in the area but she did not see the shooting, said Petitioner was wearing all black, and his coat was not plaid. (Id.) Witnesses James Shelton and Benton Jefferson testified that the shooter was wearing a dark hoody attached to the jacket, and they did not mention a baseball hat. (Id. at 44.)

Respondent argued the appellate court correctly decided that Petitioner had not satisfied either prong of the Strickland test because he would not have prevailed on his challenge to the witness's identifications. (Answer at 8-10.) Petitioner replied that there was insufficient evidence to establish his guilt, absent the flawed witness identifications. (Traverse at 10.)

Petitioner requested an evidentiary hearing on this claim.[2] (Id. at 12.)

The test announced by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), governs claims that a Petitioner was denied a fair trial because his counsel provided ineffective assistance. See Lafler v. Cooper, 132 S.Ct. 1376, 1384-85 (2012)(applying Strickland test). The Strickland test has two prongs:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.

The first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler, 132 S.Ct. at 1384 (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)(quoting Strickland, 466 U.S. at

---

[2] An evidentiary hearing is not appropriate if the court can resolve the claims based on the records before the court, including the answer, and transcripts, and records of the state court proceedings. See Rule 8, Rules Governing Section 2254 Cases in the United States District Courts. This Court is satisfied that it can resolve the habeas claims based on all materials in the record.

688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8 (2003)(per curiam)(citing Bell v. Cone, 535 U.S. 685, 702 (2002); Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Strickland, 466 U.S. at 689; United States v. Cronic, 466 U.S. 648, 656 (1984)).

"In cases where the record does not explicitly disclose trial counsel's actual strategy or lack thereof . . . the presumption may only be rebutted through a showing that no sound strategy posited [by the Respondent] could have supported the conduct." Thomas v. Varner, 428 F.3d 491, 500 (3d Cir. 2005) (citing Yarborough, 540 U.S. at 8 (2003)(per curiam)). "[The Antiterrorism and Effective Death Penalty Act' requires that [habeas courts] 'determine what arguments or theories supported . . . or could have supported, the state court's decision.'" Collins v. Sec. of PA Dep't of Corr., 742 F.3d 528, 548 (3d Cir. 2014)(quoting Richter, 131 S.Ct. at 786).

The second prong of the Strickland test, prejudice, requires a defendant to "show that there is a reasonable

18

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 546 (quoting Strickland, 466 U.S. at 694). The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. Lafler, 132 S.Ct. at 1394 (quoting Strickland, 466 U.S. at 696). "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Collins, 742 F.3d at 547 (quoting Strickland, 466 U.S. at 694). "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." Id. (citing Rolan v. Vaugh, 445 F.3d 671, 682 (3d. Cir. 2006)).

The Supreme Court case governing witness identification in a photo array is Simmons v. U.S., 390 U.S. 377 (1968), quoted by Manson v. Brathwaite, 432 U.S. 98, 105, 116 (1977). Simmons dictates that convictions based on eyewitness identification at trial, following a pretrial identification by photograph, will only be set aside if the photo identification procedure was "so impermissibly suggestive to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384.

In this case, the state appellate court on PCR review found no prejudice from the mere fact that the investigating officer conducted the photo array for witness identifications. Black, 2011 WL 2416885, at *5. The court found the differing background in the photo array used with Witness Crean was not impermissibly

suggestive because the background was only slightly different due to some darker lines showing from converting the photograph from color to black and white. Id. at *6.

The court also found nothing impermissibly suggestive about showing the photographs simultaneously rather than one at a time. Id. The fact that the Attorney General Guidelines of 2001 require simultaneous display does not establish that failure to use this procedure in 1996 somehow made the identification impermissibly suggestive. Id.

Finally, the appellate court held "the statement by police to Crean that they believed they had the suspect and the request that Nieves 'pick out' the man she saw do not 'forcefully' demonstrate that the identification was 'imposed' on Crean or Nieves." Id. If defense counsel had requested a Wade hearing, the state appellate court did not believe Petitioner would have succeeded in challenging the witness identifications. Id. Thus, the ineffective assistance of counsel claim was denied.

This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under the Antiterrorism and Effective Death Penalty Act requires a habeas court to give the state court and the defense attorney the benefit of the doubt. Woods v. Donald, 135 S.Ct. 1372, 1376 (2015). Petitioner has alleged only minor discrepancies in the procedures used in the photo

array identifications under the present Attorney General Guidelines, which were not in place at the time the photo arrays were performed in Petitioner's case. Under the totality of the circumstances here, the identification procedures were not impermissibly suggestive.  See U.S. v. McNeill, No. 06-373, 2007 WL 2234516, at *5 (W.D. Pa. Aug. 2, 2007)("defendant was invited . . . to submit case law in support of the proposition that an identification procedure could be rendered unduly suggestive where the officers inform the witness that an individual they believe to be a suspect is among those depicted in the array. Defendant has not submitted any such authority and the court has found none. Instead, case law is clear that the suggestiveness of an array is to be determined by the totality of the circumstances"); U.S. v. DePass, No. 09-686, 2010 WL 3239178, at *4 (E.D. Pa. Aug. 13, 2010)("The manner of presentation of the photos may be unnecessarily suggestive if an officer emphasizes a particular photograph or suggests a photograph the witness should identify.  . . . However, an officer telling a witness that a suspect in the case is present in the photo array is not per se unnecessarily suggestive); U.S. v. Smith, No. 10-489-2, 2011 WL 5237297, at *4 (E.D. Pa. Nov. 3, 2011)("In these circumstances, [the agent's] reference to "suspects" does not render the identification procedure suggestive").  See Perry v. New Hampshire, 132 S.Ct. 716 (2012)(judicial inquiry into

reliability of eyewitness identification was not required where identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement).

Therefore, Petitioner has not established that the state court determination was unreasonable. If Petitioner was not likely to succeed in a Wade hearing, then his counsel was not ineffective for failing to request such a hearing. See Harrington, 562 U.S. at 112 ("the likelihood of a different result must be substantial, not just conceivable")(citing Strickland, 466 U.S. at 693). Thus, the Court will deny Ground One of the petition.

### 2. Ground Two

In Ground Two of the petition, Petitioner asserted he was deprived of a fair trial because his trial counsel did not object to an erroneous jury instruction regarding the elements of aggravated sexual assault. (Petr's Habeas Brief at 46.) The judge charged the jury that purposeful intent was required for a conviction, and the intent required was actually "knowingly." (Id.) Because the jury charge was wrong, Petitioner contended the state never proved the elements of aggravated sexual assault beyond a reasonable doubt. (Id. at 47.) Petitioner argued the erroneous instruction influenced the verdict because the instruction was contrary to the intent of the New Jersey law. (Id. at 49.)

According to Respondent, there is no constitutional violation where the erroneous jury instruction went in Petitioner's favor because the instruction required a higher state of mind than was required for conviction. (Answer at 10-11.)

This Court agrees that Petitioner cannot meet the prejudice prong of the Strickland test where his trial counsel failed to object to an erroneous jury instruction that actually favored Petitioner. See Lynch v. Ficco, 438 F.3d 35, 49 (1st Cir. 2006)(finding no Strickland prejudice where it was extremely unlikely the jury verdict was affected by erroneous jury instruction regarding state of mind). The state appellate court found that Petitioner benefitted from the trial court's error in instructing the jury that it must find beyond a reasonable doubt that Petitioner purposely committed aggravated sexual assault, where the statute required only the lesser "knowing" state of mind. Black, 2011 WL 2416885, at *7. This was not an unreasonable application of the prejudice prong of the Strickland test. Thus, Ground Two of the habeas petition will be denied.

### 3.   Ground Three

Petitioner's third ground for relief is that he was denied a fair trial because trial counsel failed to argue for severance of the sexual assault from the murder charge. (Petr's Habeas

Brief at 50.) An investigator spoke to the victim after the sexual assault charge, and the victim signed a statement that she did not wish to pursue the complaint for sexual assault "against the father of her daughter." (Id.) Petitioner argued if counsel had moved to sever the sexual assault charge, evidence of sexual assault would have been barred in the murder trial and could not have been used as proof of motive, opportunity, intent, preparation, plan or identity. (Id. at 51.) Petitioner asserted severance was necessary to avoid prejudice where evidence of guilt of the sexual assault would cause the jury to infer guilt on the murder charge. (Id. at 52.) Petitioner noted the evidence regarding murder was "much more circumstantial." (Id. at 53.)

Respondent asserted the sexual assault was probative of the murder charge and could be admitted into evidence for permissible purposes. (Answer at 12.) Furthermore, evidence of the witness's withdrawal statement would not have made any difference in the verdict because there was still compelling evidence that the sexual assault occurred. (Id.) The state appellate court believed counsel's decision not to use the victim's statement was effective trial strategy because the State could have argued the victim withdrew her statement regarding Petitioner's sexual assault because he threatened to kill her. (Id. at 14.)

24

The state appellate court's denial of this claim was reasonable and entitled to deference here. The state court reasonably believed evidence of sexual assault would have been admissible under NJRE 404(b)[3] in the trial on the murder charge. Given that Petitioner threatened the victim's life in front of police officers when he was arrested at the scene of the rape, the evidence was likely to have been admissible as motive or plan during the murder trial, regardless of severance of the sexual assault and murder charges at trial. See State v. Pitts, 116 N.J. 580 ((1989)("Evidence of defendant's jealousy and hostility toward the victim . . . as well as evidence that defendant threatened to harm [the victim] with a knife and shotgun would have been admissible in the homicide prosecution to prove defendant's state of mind and motive").

The state court was also reasonable in finding that if defense counsel had raised the issue of the victim's withdrawal

---

[3] N.J.R.E. 404(b) provides:

> Other Crimes, Wrongs, or Acts. Except as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

statement to impeach the State's witnesses, then the State was likely to argue the victim tried to withdraw the sexual assault charge because Petitioner intimidated and threatened her. Thus, it was sound trial strategy not to use the victim's withdrawal statement at trial. See Adams v. Bertrand, 453 F.3d 428, 436 (7th Cir. 2006)(counsel's failure to aggressively confront sexual assault victim with prior inconsistent statements was plausible strategy to avoid alienating jurors sympathetic to the victim). Reasonable strategic decisions by counsel cannot be the basis for an ineffective assistance claim when they turn out to be unsuccessful. See Werts v. Vaughn, 228 F.3d 178, 202-03 (3d Cir. 2000)("if the court determines that 'counsel made an informed choice, which at the time the decision was made reasonably could have been considered as advancing and protecting the [defendant's] interests,' counsel will not be deemed ineffective" (quoting Commonwealth v. Hill, 450 Pa. 477, 482, 301 A.2d 587, 590 (1973)). Thus, the Court will deny Ground Three of the petition.

     4.   Ground Four

In Ground Four, Petitioner alleged trial counsel was ineffective by failing to argue Petitioner was entitled to an evidentiary hearing on his ineffective assistance of counsel claims. (Petr's Habeas Brief at 55.) Petitioner felt an evidentiary hearing would have allowed him to explore why his

26

counsel did not use the victim's statement to sever the sexual assault and murder charges, and explore why counsel did not move to suppress the in and out of court identifications, particularly that of Crean, who was the only eyewitness. (Petr's Habeas Brief at 57.)

Respondent opposed Ground Four, noting Petitioner's trial counsel was not in a position to argue for a post-conviction evidentiary hearing because Petitioner had not exhausted his direct appeals while trial counsel remained involved in the case. (Answer at 15.) If Petitioner meant to allege that PCR counsel failed to request an evidentiary hearing, Petitioner was incorrect; PCR counsel requested an evidentiary hearing in his brief and in oral argument. (Id. at 15-16.) In his Traverse, Petitioner asserted that Ground Four of the habeas petition was meant to allege that PCR counsel was ineffective for failing to argue Petitioner was entitled to an evidentiary hearing. (Traverse at 3.)

Petitioner's claim lacks merit because his post-conviction counsel did in fact request a hearing on Petitioner's post-conviction claims. (See State v. Black, Brief and Appendix on Behalf of Defendant-Appellant (N.J. Super. Ct. App. Div.)(ECF No. 9-9 at 48.) In any event, "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a

proceeding arising under section 2254." 28 U.S.C. § 2254(i).
Therefore, Ground Four of the habeas petition will be denied.

III.  CONCLUSION

    For the reasons set forth above, the Petition under 28
U.S.C. § 2254 [ECF No. 17 ] will be denied.  An appropriate
order follows.

IV.  CERTIFICATE OF APPEALABILITY

    This Court must determine whether Petitioner is entitled to
a certificate of appealability in this matter.  See Third
Circuit Local Appellate Rule 22.2.  The Court will issue a
certificate of appealability if the petitioner "has made a
substantial showing of the denial of a constitutional right."
28 U.S.C. § 2253(c)(2). This Court's discussion of Petitioner's
claims demonstrates that Petitioner has not made such a showing.
The Court will not issue a certification of appealability.


                          s/Renée Marie Bumb
                          **RENÉE MARIE BUMB**
                          **United States District Judge**


Dated: April 27, 2015